IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HERR INDUSTRIAL, INC.,                    )
                                          )
                        Plaintiff,        )
                                          )
        v.                                )        Case No. 14-1232-JWL
                                          )
CTI SYSTEMS, SA and                       )
OLD REPUBLIC SURETY COMPANY,              )
                                          )
                        Defendants.       )
                                          )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion to dismiss (Doc. # 21).

For the reasons set forth below, the motion is **granted**, and plaintiff's claims are hereby

dismissed.


### I.      Background

The following facts are taken from plaintiff's second amended complaint and the

attachments thereto.  Plaintiff Herr Industrial, Inc., a Pennsylvania corporation, entered

into a contract with defendant CTI Systems, SA ("CTI"), a corporation organized under

the laws of Luxembourg, where CTI maintains its principal place of business.  CTI had

contracted with the owner of property in Kansas to build a paint workshop, and in 2011,

CTI contracted with plaintiff to install certain components.  The contract (attached to the

complaint) contained the following provision:  "The PARTIES agree to submit to the exclusive jurisdiction of the courts of the Grand-Duchy of Luxembourg."  In addition, the general conditions governing purchase orders under the contract contained the following provision:

> By accepting the ORDER, the SUPPLIER accepts the jurisdiction of the courts where CTI is domiciled.  Any and all claims or disputes arising out of or in connection with the ORDER, regardless of the nature and cause of the claim/dispute, shall be settled by the competent court of the place of the registered office of CTI.  Notwithstanding the foregoing, CTI reserves the right to bring any claim/dispute before the competent court of the SUPPLIER's registered office, branch, agency or establishment or the place where under the ORDER the GOODS were delivered or should have been delivered.

Plaintiff performed its last work under the contract in 2013, and plaintiff alleges that CTI owes a total of $372,050.66 to plaintiff under the contract.  Plaintiff filed a mechanic's lien against the property, but CTI and defendant Old Republic Surety Company, as surety, executed and filed a bond in substitution for the lien.

In 2014, CTI brought suit against plaintiff in Luxembourg, alleging that it had paid too much to plaintiff under the contract.  Plaintiff failed to appear, and by order of July 11, 2014 (attached to the complaint), the District Court of and in Luxembourg awarded CTI judgment against plaintiff in the amount of $393,293.66, along with interest, costs and expenses, and a fee of 1000 euros.

On July 28, 2014, plaintiff brought the instant action.  By its second amended complaint, plaintiff asserts claims against CTI for breach of contract and unjust enrichment, by which plaintiff seeks damages in the amount of $372,050.66.  Plaintiff

also asserts a claim on the bond issued by CTI and its surety.  Plaintiff asserts a claim against CTI under the Kansas Fairness in Private Construction Contract Act (the KFPCCA or "the Act"), K.S.A. § 16-1801 *et seq.*, by which it seeks interest and attorney fees.  Finally, plaintiff seeks a declaratory judgment to the effect that CTI's Luxembourg judgment against plaintiff is invalid and against Kansas public policy.

Defendants move to dismiss all of plaintiff's claims.  Plaintiff does not dispute that its claim against defendant surety requires an underlying finding of CTI's liability.  Accordingly, the Court considers whether plaintiff may assert these claims against CTI in this suit.

## II.      Forum Selection Clause

### A.      *Procedural Basis for Motion to Dismiss*

Plaintiff concedes that its contract with CTI contained a mandatory forum selection clause providing for exclusive jurisdiction in Luxembourg courts.  CTI seeks dismissal of plaintiff's claims on the basis of that forum selection clause.  In its briefs, CTI cites Fed. R. Civ. P. 12(b)(6) and 12(b)(3) as possible bases for its motion to dismiss.  The Supreme Court has made clear, however, that a mandatory forum selection clause is properly enforced by a motion to transfer pursuant to 28 U.S.C. § 1404(a) or, in the case of a clause pointing to a state or foreign forum, by a motion to dismiss based on the doctrine of *forum non conveniens*.  *See Atlantic Marine Constr. Co. v. United States Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013).  Accordingly, because

the parties have fully briefed the issue of the enforceability of the forum selection clause,

the Court will consider whether dismissal is appropriate in this case under the doctrine

of *forum non conveniens*.

### B.    *Law Governing Enforcement of the Forum Selection Clause*

The Court first addresses which body of law should govern the issue of the

enforceability of the forum selection clause.   In *Excell, Inc. v. Sterling Boiler &*

*Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997), the Tenth Circuit expressly declined

to decide whether the forum state's law or federal common law controls the validity and

interpretation of a forum selection clause in a case based on diversity jurisdiction.  *See*

*id.* at 320-21 (noting that there were no material discrepancies in that case between the

two bodies of law).   Subsequently, in *Yavuz v. 61MM, Ltd.*, 465 F.3d 418 (10th Cir.

2006), a case involving federal statutory claims, the Tenth Circuit applied federal law

to conclude that, if the parties have included a choice-of-law provision in their contract,

a forum selection clause should be interpreted under the law named in that choice-of-law

provision.  *See id.* at 428-31.   The court did not address which law governs the

enforceability of a forum selection clause, however, and *Yavuz* was not a case based on

diversity jurisdiction.  *See id.*

The overwhelming majority of circuit courts consider the enforceability of forum

selection clauses under federal law in diversity cases, based on the conclusion that venue

presents a question of procedure for purposes of the *Erie* doctrine.  *See, e.g.*, *Wong v.*

*PartyGaming Ltd.*, 589 F.3d 821, 827-28 & n.5 (6th Cir. 2009) (following the Second,

Case 6:14-cv-01232-JWL-KMH   Document 34   Filed 06/12/15   Page 5 of 19

Third, Fifth, Eighth, Ninth, and Eleventh Circuits in holding that in diversity suits the enforceability of a forum selection clause is governed by federal law); *Albermarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 648-50 (4th Cir. 2010) (citing *Wong* in following the majority rule).  Moreover, in *Atlantic Marine*, a diversity case, the Supreme Court presupposed a contractually valid forum selection clause and thus did not directly address this issue; but the Court did rely on its prior cases, including *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), in concluding that a forum selection clause should be enforced under Section 1404(a) in all but the most unusual cases.  *See Atlantic Marine*, 134 S. Ct. at 582-83.  Plaintiff points out that the present case does not involve a motion to transfer under Section 1404; the Supreme Court made clear, however, that the same standards govern motions to dismiss based on *forum non conveniens*.  *See id.* at 581, 583 n.8.  Like the majority of circuit courts, this Court believes that venue presents a question of procedure that must be governed by federal law in diversity cases. Moreover, applying federal law would not run afoul of *Yavuz* in this case (the parties' contract here contains a Luxembourg choice-of-law provision), as the enforceability and interpretation of a forum selection clause present distinct questions that may appropriately be governed by different bodies of law.  *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217-24 (2d Cir. 2014) (noting this distinction and concluding that questions of enforceability must be resolved under federal law while interpretative questions should be resolved under the law designated in the choice-of-law provision). Finally, the Court notes that, since it decided *Excell*, the Tenth Circuit has applied the

federal *M/S Bremen* standards in finding a forum selection clause to be enforceable. *See American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 927 (10th Cir. 2005). Accordingly, the Court is persuaded that the Tenth Circuit would follow its sibling circuits and apply federal law to the question of the enforceability of the forum selection clause in this case.[1]

The Supreme Court has made clear that a court should respect and enforce a valid forum selection clause agreed by contracting parties. Thus, in considering a motion for transfer under Section 1404 or a motion to dismiss under the doctrine of *forum non conveniens*, a court gives no weight to the plaintiff's choice of forum or to the parties' private interests. *See Atlantic Marine*, 134 S. Ct. at 581-82. Courts "should not unnecessarily disrupt the parties' settled expectations" as expressed in the contract, and in "all but the most unusual cases," the "interest of justice" is served by holding parties to their bargain. *See id.* at 583. "Forum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and

---

[1]In arguing that Kansas law should govern the Court's consideration of the forum selection clause, plaintiff insists that this case really involves the substantive question of whether the Luxembourg judgment should be enforced here. The Court must first consider, however, whether the forum selection clause prohibits the litigation of plaintiff's claims in this Court, and the question of venue is a procedural one. Moreover, the Court notes that even if it did not apply federal law to the question of enforceability, *Yavuz* would suggest that the law of Luxembourg should govern, as chosen by the parties in their contractual choice-of-law provision. Thus, there is no basis to apply Kansas law with respect to the forum selection clause.

unjust under the circumstances." *See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (citing *M/S Bremen*, 407 U.S. at 10, 15).

### C. *Scope of the Forum Selection Clause*

Neither party has directly addressed the scope of the mandatory forum selection clauses in this case, although CTI seems to assume that all of plaintiff's claims in this case would be covered by the clauses. Certainly, neither party has invoked Luxembourg law (in accordance with *Yavuz*) to attempt to interpret those clauses. The clause on which plaintiff relies, found in the contractual conditions for purchase orders, provides for the exclusive jurisdiction of Luxembourg courts over "[a]ny and all claims or disputes arising out of or in connection with" the purchase orders. Plaintiff's claims for monetary relief—all claims other than the claim for a declaratory judgment—are based on plaintiff's allegation that CTI owes money due for work under the contract, and those claims would therefore fall within the scope of the parties' forum selection provisions. Plaintiff does not argue otherwise.

CTI has not shown, however, that plaintiff's declaratory judgment claim falls within the scope of those provisions. In the Luxembourg court, issues relating to the contract were reduced to a judgment, and plaintiff's declaratory judgment claim is thus related to that judgment and not directly to the parties' contract. Moreover, it is not reasonable for the parties to have expected a Luxembourg court to have exclusive jurisdiction to decide whether its own judgment should be enforced in accordance with the public policy of a particular jurisdiction in the United States. Therefore, the Court

concludes that plaintiff's declaratory judgment claim is not subject to the mandatory

forum selection clause providing for exclusive jurisdiction in the courts of Luxembourg.

### D.      *Whether Enforcement Violates a Strong Public Policy*

Plaintiff argues that enforcement of the forum selection clause in this case would

violate the public policy of the State of Kansas as expressed in Kansas statutes.  In *M/S*

*Bremen*, the Supreme Court stated that "[a] contractual choice-of-forum clause should

be held unenforceable if enforcement would contravene a strong public policy of the

forum in which suit is brought, whether declared by statute or by judicial decision." *See*

*M/S Bremen*, 407 U.S. at 15.

Plaintiff first argues that the forum selection clause violates Kansas public policy

in favor of requiring actions involving mechanic's liens on Kansas property to be filed

in Kansas.  In particular, plaintiff points to K.S.A. § 16-1803(b)(2) of the KFPCCA,

which provides that a provision in a private construction contract that purports to waive

or extinguish rights provided by Kansas's mechanic's lien statutes "shall be against

public policy and shall be void and unenforceable." *See id.*  Plaintiff notes that those

statutes include mandatory joinder and venue provisions, and it spends a large portion

of its brief arguing that a forum selection clause in a construction contract necessarily

conflicts with those statutory provisions.  Plaintiff does not seek to enforce any

mechanic's lien in this case, however—as plaintiff itself alleges in its complaint, its lien

was replaced by a bond.  Thus, enforcement of the forum selection clause in this case

would not implicate any Kansas policy in favor of preserving mechanic's lien rights, and

the standard from *M/S Bremen* is not met here.  *See Nauert v. Nava Leisure USA, Inc.*,

2000 WL 381509, at *3-4 (10th Cir. Apr. 14, 2000) (unpub. op.) (rejecting the argument

that a forum selection clause violated the public policy of Colorado as expressed in

particular statutes, based on the court's conclusion that those statutes did not apply to the

fact situation in that case).[2]

Plaintiff also points to K.S.A. § 16-1803(b)(1) of the Act, which deems void and

unenforceable as against public policy any provision in a private construction contract

that purports to waive or extinguish procedural rights in connection with litigation to

resolve disputes.  *See id.*  Plaintiff argues that enforcement of the forum selection clause

would have the effect of extinguishing its procedural right to bring claims in the venue

of its choice, including Kansas.

The Court does not agree with plaintiff, however, that enforcement would violate

any strong public policy of Kansas as contemplated by the Supreme Court in *M/S*

*Bremen*.  The Court first notes that the Act does not expressly prohibit the use of forum

selection clauses in private construction contracts (and no court has held that the Act has

---

[2]Plaintiff argues in a footnote that a contractual provision that violates public policy is void *ab initio*.  The cases cited by plaintiff in that footnote, however, did not involve forum selection clauses and are therefore distinguishable.  As determined above, Kansas law (including a Kansas statute making any particular contractual provision void) does not apply in deciding whether to enforce a forum selection clause.  Moreover, in *M/S Bremen*, the Supreme Court referred to the presence of a strong public policy of the forum state in the context of a forum selection clause's *enforceability*.  *See M/S Bremen*, 407 U.S. at 15.  Enforcement in this case would not implicate any policy concerning mechanic's lien rights.

that effect); thus, the Act hardly provides a strong statement of a policy against such clauses in such contracts.

The Court finds especially persuasive the reasoning of the Fourth Circuit in *Abermarle*.  In that case, the court held that, despite a South Carolina statute that effectively made all forum selection clauses permissive instead of mandatory, enforcing a mandatory forum selection clause in its case would not violate a strong public policy of that state, for four reasons.  *See Abermarle*, 628 F.3d at 651-52.  First, the Fourth Circuit noted that federal law governs the issue of venue for cases filed in federal court, and that any statute purporting to impose South Carolina procedural rules would be preempted.  *See id.* at 651.  Second, the court found significant that the reluctance of states to enforce forum selection clauses was specifically addressed by the Supreme Court in *M/S Bremen*.  *See id.*  In *M/S Bremen*, the Supreme Court noted that "[m]any courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court;" but the Court rejected any such argument as reflecting a "provincial attitude regarding the fairness of other tribunals," and it imposed a presumption of enforceability in light of the "compelling reasons" why freely-negotiated international agreements should be given full effect.  *See M/S Bremen*, 407 U.S. at 9, 12-13.  Third, the Fourth Circuit in *Abermarle* stated that it could find no evidence indicating that the state statute manifested a strong public policy of South Carolina, as no court had so held, and in fact South Carolina courts had enforced mandatory clauses in contracts.  *See Abermarle*, 628

F.3d at 652.  Finally, the Fourth Circuit reasoned as follows:

> *Fourth* and finally, it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *[M/S] Bremen*.  *[M/S] Bremen* would have little effect if states could effectively override the decision by expressing disagreement with the decision's rationale.  Classifying South Carolina's statute as manifesting a strong public policy within *[M/S] Bremen*'s reasoning would allow the very "provincial attitude" rejected by *[M/S] Bremen* to override the federal policy of favoring a contractual choice of forum.

*See id.*

In *Brahma Group, Inc. v. Benham Constructors, LLC*, 2009 WL 1065419 (D. Utah Apr. 20, 2009), the court reached a similar conclusion.  In that case, the plaintiff, a Utah resident, argued that a forum selection clause violated a strong public policy as expressed in a Utah statute that made void as against public policy any forum selection clause in a construction contract involving work in Utah that forced a Utah resident to litigate elsewhere.  *See id.* at \*4.  The court rejected that argument as follows:

> [I]t does not appear that protecting Utah residents from lawsuits filed in another jurisdiction and providing a forum for Utah residents' legal disputes are sufficient to qualify as "strong" public policies against abiding by the express wishes of the parties and enforcing the forum selection clause.  Every state has a motivation to provide a forum for its residents, but the requirement of a "strong" public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in state.

*See id.* (footnote omitted).  The court also quoted the Supreme Court's statement from *M/S Bremen* that "the expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."  *See id.* (quoting *M/S*

*Bremen*, 407 U.S. at 9).

In *Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, 2013 WL 3177881 (D. Md. June 20, 2013), the court concluded that Pennsylvania's statute prohibiting out-of-state forum selection clauses in certain construction contracts did not evidence a strong public policy to which federal courts should defer. *See id.* at *3-4. In so concluding, the court noted that deference to the state statute would contravene the express terms of the parties' contract, and it found the reasoning of the Fourth Circuit in *Abermarle* to be applicable in its case as well. *See id.*

Finally, in *Bowen Engineering Corp. v. Pacific Indemnity Co.*, 2015 WL 73759 (D. Kan. Jan. 6, 2015), decided a mere six months ago, Judge Marten of this court followed *Abermarle*, *Brahma*, and *Whiting-Turner*, and reached the same conclusion with respect to the same provision of the KFPCCA that plaintiff cites in this case. *See id.* at 4-8. Judge Marten noted that some of the same considerations cited by the other courts were present in its case—the parties were not Kansas citizens; they freely and voluntarily agreed to litigate all matters in another forum; and Kansas courts routinely enforce mandatory forum selection clauses that are reasonably related to the transactions at issue. *See id.* at *7 (citing Kansas cases).

The Court is persuaded by the reasoning of these courts.[3]  Because plaintiff is not

---

[3]Plaintiff has not cited any case in which the court rejected the reasoning of these cases or reached a different conclusion.  In *Bowen*, Judge Marten noted that a few courts have reached different conclusions without any substantial analysis. *See Bowen*, 2015

(continued...)

a Kansas resident, any intent of the Kansas Legislature in enacting the KFPCCA to protect the state's own residents is not implicated in this case.  As noted in *Bowen*, Kansas courts do enforce forum selection clauses, and thus there is no Kansas public policy against such clauses generally.  Neither the Kansas Legislature nor the Kansas courts have expressly indicated that there is a strong public policy against the enforcement of forum selection clauses in construction contracts.  Indeed, unlike the cases discussed above, the cited statute (the KFPCCA) does *not* expressly prohibit the type of forum selection clause at issue in the case, which makes it even more of a leap to declare a strong public policy in this case.  Finally, as noted by the other courts, accepting plaintiff's argument in this case would override the strong preference under federal law for the enforcement of forum selection clauses, on the basis of the type of provincial attitude decried by the Supreme Court.  Accordingly, the Court rejects plaintiff's argument that the mandatory forum selection clause should not be enforced because it violates a strong public policy of the State of Kansas.

The Court does note that plaintiff has asserted a claim against CTI under the KFPCCA, which provides that venue for an action to enforce the Act shall be in the location of the real property at issue.  *See* K.S.A. § 16-1806.  That direct reference to venue arguably provides a stronger statement of a Kansas policy disfavoring forum selection clauses than the Act's anti-waiver provisions discussed above.  Nevertheless,

---

[3](...continued)
WL 73759, at *8 n.5 (citing cases).

for the reasons already stated, the Court concludes that this statute does not reflect the "strong public policy" required to avoid enforcement of the forum selection clause that *M/S Bremen* requires.  Moreover, the Court notes that even if plaintiff were permitted to litigate that claim in this forum, it would be subject to dismissal at this stage.  In its claim under the Act, plaintiff alleges that CTI failed to pay amounts due within 30 days and that it is therefore entitled to interest pursuant to K.S.A. § 16-1803.  That statutory provision, however, provides for payment within 30 days and interest thereafter only with respect to "undisputed" amounts due.  *See id.* § 16-1803(d), (e).  In this case, a court has declared that CTI paid plaintiff too much for work done under the parties' contract.  Accordingly, plaintiff has not stated a plausible claim that CTI failed to pay any undisputed amounts due, and such claim is therefore subject to dismissal.  Plaintiff also asserts a claim for an award of costs and attorney fees pursuant to K.S.A. § 16-1806, which provides for such an award to the prevailing party.  *See id.*  Because the Court is dismissing all of plaintiff's substantive claims, plaintiff cannot be the prevailing party in this suit, and its claim for costs and fees must also fail as a matter of law.

### *E.      Whether Enforcement Would Be Unreasonable*

As noted above, a party resisting enforcement of a forum selection clause carries a "heavy burden" of showing that enforcement would be unreasonable and unjust.  *See Riley*, 969 F.2d at 957 (citing *M/S Bremen*, 407 U.S. at 10, 15).  Plaintiff argues that the parties' mandatory forum selection clause is unfairly one-sided because while it is required to bring suit in Luxembourg, the clause gives CTI additional venues in which

14

to sue.

Plaintiff has not cited any authority to support the argument that giving one party more options in a forum selection clause makes the clause so unreasonable as to render it unenforceable. Plaintiff cites *LG Electronics Inc. v. Fritz Transportation International*, 2001 WL 1843715 (N.D. Cal. Oct. 2, 2001), in which the court refused to enforce a forum selection clause. *See id.* at *3-4. That case is easily distinguishable, however, as it involved a clause that allowed the defendant to choose among six fora at will and at any time during the litigation, even with respect to a suit initiated by the opposing party. *See id.* Thus, the case does not bear on the reasonableness of a clause that provides particular jurisdictions in which each side must initiate suit.

Plaintiff also cites *General Electric Capital Corp. v. John Carlo, Inc.*, 2010 WL 3937313 (E.D. Mich. Oct. 5, 2010), but that case actually undermines plaintiff's position here. In that case, the parties agreed to a clause that required the defendant to sue in other jurisdictions but did not constrain the plaintiff's choice of forum. *See id.* at *2. In opposing summary judgment, the defendant argued that the clause showed the parties' intent to litigate only in those other jurisdictions. *See id.* The court rejected that argument and retained jurisdiction over the case, noting that the "one-sided" forum selection clause bound only the defendant. *See id.* Thus, in *General Electric*, the court *gave effect* to a forum selection clause that was completely "one-sided" (obviously the court did not use that term pejoratively).

In the present case, the clause is not as one-sided, as it also limits CTI to

15

particular jurisdictions, and plaintiff has cited no authority to support its argument that

such an agreement is unreasonable under *M/S Bremen*.  The Supreme Court has made

clear that a forum selection clause should be enforced if its has been freely bargained,

and plaintiff has not identified a sufficient basis for refusing to enforce the clause here.

>     *F.*      <u>*Summary*</u>

Accordingly, the Court will give effect to the parties' agreed mandatory forum

selection clause requiring plaintiff to bring its claims in Luxembourg.  As noted above,

the Court has concluded that plaintiff's claims, with the exception of its claim for a

declaratory judgment, fall within the scope of the clause.  Accordingly, the Court

dismisses those claims (against both defendants) pursuant to the clause.

## III.    <u>Declaratory Judgment Claim</u>

In its remaining claim, plaintiff seeks a declaratory judgment to the effect that

CTI's Luxembourg judgment is not enforceable here.  The parties agree that the Court

should apply the test from *Hilton v. Guyot*, 159 U.S. 113 (1895), in which the Supreme

Court stated that federal courts will recognize a foreign judgment if

> there has been an opportunity for a full and fair trial abroad before a court
> of competent jurisdiction, conducting the trial upon regular proceedings,
> after due citation or voluntary appearance of the defendant, and under a
> system of jurisprudence likely to secure an impartial administration of
> justice between the citizens of its own country and those of other
> countries, and there is nothing to show either prejudice in the court, or in
> the system of laws under which it is sitting, or fraud in procuring the
> judgment, or any other special reason why the comity of this nation should
> not allow if full effect.

16

*See id.* at 202; *see also Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 359 (10th Cir. 1996) ("Nothing in Kansas statute or case law suggests that it would not follow the principles set out in [*Hilton*]."). CTI seeks dismissal of this claim on the merits.

In asserting this claim in its complaint, plaintiff alleges that any dispute concerning payment under the contract must be brought in Kansas pursuant to K.S.A. § 16-1806, and more broadly that "[a]s articulated in the FPCCA, Kansas public policy provides that disputes concerning payment pursuant to a contract for private construction, where the construction efforts occur in the State of Kansas, are to be litigated in the State of Kansas." In its opposition to the motion to dismiss, plaintiff does not appear to pursue this argument against recognition of the Luxembourg judgment, but the Court will nevertheless address it.

K.S.A. § 16-1806 provides that venue shall be in Kansas for actions to enforce Sections 16-1803 to 16-1805 of the Act. CTI did not seek to enforce any of those statutory provisions in its suit in Luxembourg; thus, the venue provision of Section 16-1806 does not provide a basis not to recognize the Luxembourg judgment. Moreover, in light of the limited scope of the Act's only venue provision, the Court rejects any argument that the Act somehow expresses a policy against the recognition of any out-of-state judgment relating to a construction contract performed in Kansas that does not include claims within the scope of that venue provision. Thus, as pleaded, plaintiff has not stated a plausible claim that the Luxembourg judgment should not be recognized in Kansas.

17

Although it has not pleaded an alternative basis for its claim, plaintiff argues in its opposition brief that the judgment of the Luxembourg court should not be recognized under *Hilton* because of a lack of jurisdiction. The Court rejects that basis for plaintiff's claim as a matter of law, however; thus, there is no basis for an amendment of that claim to conform to this argument concerning a lack of jurisdiction.

Plaintiff notes that the Luxembourg judgment does not contain explicit findings concerning that court's jurisdiction over plaintiff and the subject matter; plaintiff has not shown, however, that that court actually lacked jurisdiction. Plaintiff argues that the only plausible basis for jurisdiction over it in Luxembourg would be the parties' forum selection clause. *See, e.g.*, *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("jurisdiction over a party may be conferred upon a court by contractual agreement of the parties"). In the relevant clauses in the parties contract, plaintiff "agree[d] to submit to" and "accept[ed]" the jurisdiction of Luxembourg courts. Plaintiff argues, however, that the Luxembourg court's judgment exceeded that consent to jurisdiction because the court concluded that because CTI paid amounts not due under the contract, CTI's recovery was based not on contractual liability but instead on the recovery of undue payments. The flaw in this argument, however, is that plaintiff did not merely consent to suit in Luxembourg on claims sounding in breach of contract; rather, as conceded by plaintiff, it agreed to a clause that provided for exclusive jurisdiction in Luxembourg for "[a]ny and all claims or disputes arising out of or in connection with [purchase orders], regardless of the nature and cause of the

18

claim/dispute."  The Court has no difficulty in interpreting that language to include CTI's claim in Luxembourg to recover excess amounts paid for work under the contract. Therefore, plaintiff has not provided any basis for the Court to conclude that the Luxembourg court lacked jurisdiction over plaintiff.

Accordingly, plaintiff has not stated a plausible claim for a declaratory judgment to the effect that the Luxembourg judgment should not be enforced, and the Court therefore dismisses that claim pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 21) is **granted**, and plaintiff's claims are hereby dismissed.

IT IS SO ORDERED.

Dated this 12th day of June, 2015, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge